FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

11 DEC -8  PM 4: 25

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | | |
|---|---|---|
| SENSIENT FLAVORS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| INDIANA OCCUPATIONAL SAFETY AND | ) | |
| HEALTH ADMINISTRATION, | ) | |
| JASON REASON, | ) | |
| DONNA JAQUES, | ) | **1 : 11 -cv- 1 6 2 2 JMS -DML** |
| KATHLEEN KREISS, | ) | |
| JEAN COX-GANSER, | ) | |
| CHRIS PIACITELLI, | ) | |
| NATIONAL INSTITUTE FOR | ) | |
| OCCUPATIONAL SAFETY AND HEALTH, | ) | |
| and AZITA MASHAYEKHI, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Sensient Flavors LLC ("Sensient"), by its attorneys, Michael Best & Friedrich LLP, and

Barnes and Thornburg LLP, in a civil complaint against the Indiana Occupational Safety and

Health Administration ("IOSHA"), certain of its officials and employees in their individual

capacities including Jason Reason and Donna Jaques, and the National Institute for Occupational

Safety and Health ("NIOSH") of the Centers for Disease Control, Public Health Service,

Department of Health and Human Services, and certain of its officials and employees including

Kathleen Kreiss, Jean Cox-Ganser, and Chris Piacitelli, in their individual capacities, and alleges

as follows:

1

### Nature of the Action.

1.      Sensient seeks declaratory relief and damages to redress a broad abuse of government power by the defendants who, acting under color of state and federal law, have repeatedly acted individually and in concert to deprive Sensient of its rights under the United States Constitution and federal and state laws.  As will be described below, Sensient has been severely injured by the defendants' retaliatory and unconstitutional actions, which have violated Sensient's Fourth Amendment right to be free in its property and papers from unreasonable government searches and seizures and its right to access and petition the government and the courts under the First Amendment.  Sensient has been subjected to enormous intrusions, burdens and costs as a result of the defendants' improper and illegal conduct.  It has been forced to pay costly fees to consultants, experts, and lawyers. Employees have been harassed and intimidated. And its long-earned and well-deserved reputation as a leader in the protection and promotion of employee health and safety has been put in jeopardy by the adverse publicity accompanying defendants' abuse of governmental power.

2.      In particular, Sensient seeks a declaration that certain provisions of the Indiana Administrative Code as applied to Sensient are unconstitutional.  Defendants' reliance on those regulations resulted in the issuance of a search warrant, and later an amended search warrant, that resulted in repeated unreasonable government searches of Sensient's property.  Defendants used the amended search warrant to unreasonably and illegally invade Sensient's private property, intrude on Sensient's legitimate business, and harass, threaten and retaliate against Sensient in response to Sensient's lawful exercise of its rights under the First and Fourth Amendments to the United States Constitution.

2

3.     Defendants also abused process by using IOSHA's enforcement power to circumvent and grossly exceed the statutory and regulatory limits on NIOSH's power and authority, by facilitating NIOSH and NIOSH officials' individual research and other improper goals through mechanisms intended and legally allowed only for legitimate enforcement purposes that are not applicable here, all in violation of Sensient's rights under the Fourth and Fourteenth Amendments.  Sensient seeks damages under 42 U.S.C. § 1983, based upon defendants' intentional and blatant disregard and violations of Sensient's First and Fourth Amendment rights.[1]  Sensient seeks damages under pendent state law claims for abuse of process and conspiracy to injure trade or business.

4.     Sensient challenges NIOSH's Health Hazard Evaluation ("HHE") Report under the Administrative Procedures Act.  In June 2011, certain individual defendants working for NIOSH published a document, unfairly critical of Sensient, that expressly disclaimed NIOSH authorship.  Such private use of NIOSH resources is not consistent with law.  When Sensient questioned their inappropriate conduct, the individual defendants caused NIOSH to re-issue the same words as its HHE Report, required Sensient to post the HHE Report within the Sensient facility, and publicly distributed the HHE Report.  Those actions and requirements adversely affected Sensient, and caused injury to Sensient, as the HHE Report is grossly inaccurate and is based upon process, methodology, findings and conclusions which amount to bad science and a clear abuse of agency discretion.  In issuing the HHE report, defendants willfully used the processes and resources of a government agency for an improper purpose.  Their objectives

---

[1] In a December 2, 2011 state court filing seeking to deny Sensient's right to quash the search warrant, counsel for IOSHA affirmatively acknowledged that the victim of an unconstitutional search, as Sensient alleges it is here, may "affirmatively bring the grievance before a federal tribunal" via a *Bivens* suit and similar state law actions.  *In The Matter of a Search Warrant Regarding the Following Real Estate: Sensient Flavors, Inc.,* 49G05-1109-MC-002441, Indiana Commissioner of Labor's Memorandum of Law, pg 4-5 (Dec. 2, 2011).

appear to be ideological, rather than scientific, and they appear to be motivated to advance their ideology and power by attacking Sensient, as opposed to having legitimate concerns of science or worker safety.   The HHE Report's findings harm Sensient's competitive position in the market and its good will and reputation with its employees and the public at large, and have resulted in substantial costs to Sensient in attempting to defend itself.  Sensient asks for a judgment under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, declaring that (a) NIOSH's HHE Report is based on faulty science, and that (b) NIOSH's public issuance of the Report and (c) its requirement that Sensient post that report were unlawful.

### The Parties

5.      Plaintiff, Sensient, is a Delaware limited liability company with its principal place of business located at 5600 West Raymond Street, Indianapolis, Indiana.   Among other things, Sensient develops, manufactures, and distributes proprietary flavorings systems which are essential components of food and beverage products.

6.      Defendant IOSHA is a division of the Indiana Department of Labor.  IOSHA is an enforcement agency, with responsibility for ensuring compliance with public and private sector occupational safety and health in Indiana.

7.      Defendant Jason Reason is and was at all times relevant to this complaint employed as a Compliance Safety and Health Officer with IOSHA.  Reason is sued in his individual capacity.

8.      Defendant Donna Jaques is and was at all times relevant to this complaint employed as a Compliance Safety and Health Officer with IOSHA.  Jaques is sued in her individual capacity.

9.     Defendant NIOSH is the federal agency responsible for conducting research and making recommendations regarding workplace health and safety issues.  It is part of the Centers for Disease Control and Prevention, within the Department of Health and Human Services ("HHS").

10.    Defendant Kathleen Kreiss is and was at all times relevant to this complaint employed by NIOSH including in the Division of Respiratory Disease Studies branch of NIOSH, and is sued herein in her individual capacity.

11.    Defendant Jean Cox-Ganser is and was at all times relevant to this complaint employed by NIOSH including in the Division of Respiratory Disease Studies branchy of NIOSH, and is sued herein in her individual capacity.

12.    Defendant Chris Piacitelli is and was at all times relevant to this complaint employed by NIOSH and is sued herein in his individual capacity.

13.    Defendant Azita Mashayekhi, is and was at all times relevant to this complaint employed as a Staff Industrial Hygienist, Safety and Health Department, by the International Brotherhood of Teamsters, and is sued herein in her individual capacity.

### Jurisdiction and Venue

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction), and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

15.    Venue lies in the United States District Court for the Southern District of Indiana, Indianapolis Division, pursuant to 28 U.S.C. § 1391(b), in that the actions giving rise to this dispute occurred within this judicial district.

## NIOSH and IOSHA Statutes and Administrative Regulations

16.     Under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-675, 677-678 ("OSH Act"), Congress created both NIOSH and the Occupational Safety and Health Administration ("OSHA"). The two are separate and distinct agencies with separate responsibilities. NIOSH is a part of the Centers for Disease Control and Prevention, HHS, and legally is solely a research agency. 29 U.S.C. § 671. OSHA is part of the Department of Labor and is responsible for promulgating and enforcing private-sector workplace safety and health standards. 29 U.S.C. §§ 655-659.

17.     Section 8 of the OSH Act encourages States to develop and operate their own job safety and health programs. OSHA approves and monitors those plans. 29 U.S.C. § 667. State plans must set standards which are at least as effective as OSHA's comparable standards. *Id.*

18.     Indiana has adopted a complete State plan. The plan was approved, and OSHA's enforcement authority thereby was relinquished under section 18(e) of the OSH Act, on September 26, 1986. IOSHA therefore is responsible for implementation of the State plan.

19.     Indiana's workplace safety statutes and standards are almost identical to the OSH Act and OSHA's corresponding standards, and in some instances Indiana has adopted and incorporated by reference OSHA's standards. Indiana Code ("IC") § 22-8-1.1-1 to 22-8-1.1-51; 610 Indiana Administrative Code ("IAC") § 9-1-1 et seq.

20.     The Indiana statute and IOSHA's regulations purport to authorize IOSHA compliance safety and health inspectors to enter private workplaces "without delay and inspect" only at "reasonable times" IC § 22-8-1.23.1; and to inspect only "during regular working hours and at other reasonable times." 610 IAC § 9-2-4(a). The regulations authorize the inspectors to inspect only "within reasonable limits and in a reasonable manner." 610 IAC § 9-2-4.

6

21.    Indiana's regulations provide that, if an employer refuses to permit an inspector to enter a workplace, the inspector must terminate the inspection and report the refusal and reasons therefore to the State Commissioner of Labor or his designee, who in turn must consult with the Attorney General or his designee, "who shall take appropriate action, including compulsory process." 610 IAC § 9-2-5(a), (b).

22.    Neither the IOSHA regulations authorizing compulsory process nor the Indiana statute contains any guidance, requirements or limits on the exercise of that compulsory process. 610 IAC § 9-2-5 states only that the term "compulsory process" means: "the institution of any appropriate action, including but not limited to, ex parte application for an inspection warrant or its equivalent. Ex parte inspection warrants shall be: (1) the preferred form of compulsory process; and (2) used before legal action in a court of competent jurisdiction is taken." 610 IAC § 9-2-5(d).

23.    No statute or regulation specifies what must be contained within the warrant, how long IOSHA has to execute the warrant upon issuance, how long a warrant will remain valid upon issuance, whether the warrant must ever be returned to the issuing judge, what if any inventory procedures are required during execution, or whether a copy of the warrant must be shared with the employer.

24.    The Indiana regulations do contain general parameters for administrative inspections. Indiana has adopted and incorporated by reference sections 1903.7 through 1903.22 of Title 29 of the Code of Federal Regulations. 610 IAC § 9-2-8. Section 1903.7 requires that, at the beginning of an inspection, IOSHA inspectors must present their credentials, explain the nature and purpose of the inspection, and indicate generally the scope of the inspection and the records they wish to review. The section purports to give inspectors authority to take

7

environmental samples, take photographs, employ other reasonable investigative techniques, and privately question employees, agents, employers, and others. There are no corresponding guidelines or requirements for compulsory process or inspection warrants in the incorporated OSHA regulations.

25.     NIOSH claims broad authority to conduct occupationally-related research and related activities, and to make recommendations concerning occupational safety and health standards. 29 U.S.C. §§ 669(a), 671. NIOSH claims authority to enter workplaces to make inspections and to question employers and employees for the purpose of carrying out its research and recommendation functions, but such authority is limited by the Constitution and Laws of the United States.

26.     One of the ways in which NIOSH accomplishes its functions is through an HHE. 29 U.S.C. § 669; 42 C.F.R. Part 85. Upon a legitimate request and after completing an appropriate investigation or inspection, NIOSH prepares an HHE Report in which, according to its own rules, NIOSH must identify hazardous substances or physical agents found in the workplace, state whether they have potentially toxic or hazardous effects in the concentrations or levels found, and must describe the basis for its judgments. Copies of the HHE Report must be mailed to the employer and authorized representatives of the employees, as well as to the Department of Labor. 42 C.F.R. § 85.11. The regulations do not provide authority for individuals to use NIOSH resources to issue HHE reports that are their private opinions.

*The International Brotherhood of Teamsters' Request and the May 2008 NIOSH inspection.*

27.     In or around March 2008, on information and belief, Washington-based representatives of the International Brotherhood of Teamsters ("IBT") convinced local union representatives of the production and maintenance employees at Sensient's Indianapolis facility

to submit to NIOSH a request for an HHE of the facility. On information and belief, the Washington-based IBT representatives, and particularly Azita Mashayekhi, were in contact with and acting in concert with NIOSH, and apparently made the request not out of a genuine concern that there then existed a health hazard, as complained of more particularly herein.

28.     One of the thousands of flavoring substances Sensient uses in manufacturing some of its products is diacetyl. The union's request claimed diacetyl exposure as a potential risk for Sensient's workers. Significantly, in the HHE request no allegation or reference was made to any actual health problems suffered by Sensient employees at the plant, and Sensient had not received a report of any employee suffering respiratory or other problems believed to be related to any type of occupational exposure.

29.     Between the time of the union request and the NIOSH inspection in May 2008, Sensient cooperated with NIOSH and assisted NIOSH in the process by providing documents and other information in advance of NIOSH's visit and arranging for NIOSH inspectors to review records concerning the company's respiratory protection program with Sensient's medical consultant in Indianapolis. Sensient asked NIOSH if there was any particular type of production that it would like to observe when it visited the facility. NIOSH responded only that it wanted to see a "normal" day of production.

30.     On May 29 and 30, 2008, NIOSH conducted the inspection. Sensient cooperated fully, providing NIOSH inspectors with unfettered access to its facility and employees, and providing NIOSH with voluminous documents, at its request, before, during, and after the inspection.

31.    NIOSH's regulations require NIOSH to promptly identify any health hazard it discovers during an inspection. NIOSH did not identify any such hazard during the May 2008 inspection.

*NIOSH Announces its Intent to Conduct a Second Inspection.*

32.    On two occasions in mid-June 2008, NIOSH contacted Sensient and announced it wanted to conduct a second inspection, which would involve at least a week of medical/epidemiological testing of Sensient's employees, and additional weeks of personal and area chemical exposure and engineering control testing.   NIOSH indicated it would begin this second inspection on July 21, 2008.

33.    NIOSH had not identified an immediate health hazard and thus was no longer responding even to the union's ostensible request that had been presented as the initial basis for NIOSH to seek access to Sensient.  Instead, NIOSH improperly attempted to use the HHE request as a pretext to conduct an extended research project inside Sensient's facility, at Sensient's burden and expense.

34.    On June 24, 2008, Sensient objected to NIOSH regarding the propriety and scope of NIOSH's proposed second inspection.  In particular, Sensient questioned the motivation and rationale for this second visit given that NIOSH had not identified any health hazards and had made its request before receiving any air sampling test results or any of the medical records its inspectors briefly reviewed and requested be copied during the first visit.

35.    On July 8, 2008, NIOSH sent a letter to Sensient.  NIOSH's letter did not respond to Sensient's expressed concerns and did not provide justification for another inspection, but it nonetheless indicated its intent to begin a wall-to-wall unfettered inspection inside Sensient's facility the week of July 27, 2008.

10

*Sensient Exercises Its First Amendment Rights to
Access to the Courts and to Petition the Government for Redress.*

36.    On July 14, 2008, Sensient filed a complaint for declaratory judgment against

NIOSH in the United States District Court for the Southern District of Indiana. *Sensient Flavors*

*LLC v. National Institute for Occupational Safety and Health,* Case No. 08-CV-0949-RLY-

TAB. Sensient sought a declaration that NIOSH lacked authority under 29 U.S.C. § 669(a)(6) to

conduct the second, wall-to-wall unfettered inspection of its Indianapolis facility. Sensient

sought a temporary restraining order. Before the court could rule on Sensient's request for a

temporary restraining order, NIOSH agreed to stay any further inspection pending the outcome

of the proceeding.

37.    After approximately 10 months of litigation, on May 28, 2009, the district court

issued an order dismissing Sensient's action. The district court did not dismiss the action on the

merits. Instead, it accepted NIOSH's argument that the action was premature under the

Administrative Procedures Act in that there had been no final agency action. Significantly, the

Court specifically ruled that if NIOSH later attempted to conduct the second inspection, Sensient

had the legal right to refuse entry. If, in response, NIOSH obtained a warrant to conduct the

second inspection, Sensient could return to the District Court to challenge the warrant.

38.    Three days after dismissal of the lawsuit, on June 1, 2009, NIOSH sent Sensient

an "interim letter" purporting to detail certain preliminary or interim findings based on its May

2008 inspection. That interim letter also renewed NIOSH's request for a second inspection of

the Sensient facility.

39.    On August 28, 2009, Sensient communicated to NIOSH a number of serious and

specific disagreements and objections to NIOSH's interim letter. Among other things, Sensient

questioned the scientific methodology and the legitimacy of the scientific findings resulting from

11

the May 2008 inspection.  Sensient explained to NIOSH that while it was prepared to work with NIOSH to provide additional documents and information necessary for it to complete the HHE, Sensient continued to believe that a second inspection was not warranted by the law or the facts.

40.    In response, NIOSH requested additional documents from Sensient, which Sensient provided in full by late 2009.  Thereafter, NIOSH never requested to return to Sensient's facility, nor did it return to Sensient with a warrant.

*The HHE Report.*

41.    Nearly two years after NIOSH's interim letter, in June 2011, defendants Kreiss, Piacitelli, and Cox-Ganser issued a document entitled Lung Function (Spirometry) Testing in Employees at a Flavorings Manufacturing Plant --- Indiana.  This "HHE Report" was purportedly based upon the May 2008 inspection of the Sensient facility and the documents Sensient had provided before, during and after that inspection in response to NIOSH's requests. Said individual defendants used NIOSH resources to send the document to Sensient, and directed Sensient to post it in Sensient's facility for 30 days.

42.    Contrary to any reading of NIOSH's own regulations, the 40-page document contained a disclaimer that the "findings and conclusions in this report are those of the authors and do not necessarily represent the views of NIOSH."  Such private use of NIOSH resources is not authorized by any regulation or statute.

43.    By letter dated July 12, 2011, Sensient properly questioned NIOSH regarding the unusual disclaimer of authorship of the document and whether, in light of the disclaimer, the document was actually a NIOSH HHE Report, and whether Sensient was required to post it or send it to the employee representatives.

12

44.     On July 20, 2011, without addressing Sensient's concerns and without explanation, NIOSH re-issued the HHE Report, this time omitting the disclaimer language. The HHE Report was also published on NIOSH's website and remains there today.

45.     Sensient thereafter complied with NIOSH's demand that it post the HHE Report at its facility in a manner consistent with all applicable rules and regulations. Despite making the HHE Report available to any employee upon request, not a single Sensient employee asked for a copy.

*Flaws in the HHE Report.*

46.     The scientific methods and analysis used by NIOSH in compiling the HHE Report were critically and seriously flawed, and resulted in arbitrary and scientifically erroneous findings and conclusions.

A.     By way of a simple example, the NIOSH HHE Report, prepared by defendants Kreiss, Cox-Ganser, and Piacitelli, lacks basic scientific validity because the defendants did not properly collect sufficient data relative to employee smoking history to properly account for and correct the effects of smoking on the data, and failed to properly or adequately control for some of the most common causes of pulmonary restriction and obstruction, including obesity and smoking history.

B.     As a second example, NIOSH misclassified numerous employees as non-smokers, when in fact they were either current or ever-smokers. NIOSH's misclassification substantially and improperly skewed the spirometry data and other testing results.

C.     NIOSH reported in the HHE that an employee had very severe mixed obstructive and restrictive pattern of spirometric abnormality which NIOSH suggests is

13

likely attributable to workplace exposure. NIOSH improperly failed to disclose, however, that this employee is a very heavy smoker with a history of emphysema, factors which completely explain the spirometric abnormalities.

D.      NIOSH reported that 30 of 106 workers had restrictive pattern of abnormality. However, they improperly failed to consider or disclose that nearly half of those workers are obese and nearly half are current or former smokers.

E.      As yet another example, nearly half of the workers whom NIOSH claimed showed a restrictive pattern of abnormality worked in areas at Sensient that NIOSH does not categorize as "high exposure" to diacetyl or other chemicals of interest. And, of the remaining population of workers who in fact worked in a "high exposure" area, NIOSH failed to disclose that almost all were either obese or current or former smokers.

F.      NIOSH failed to employ certain medical testing procedures which would have revealed whether pulmonary abnormalities found in some employees were more likely to be the result of smoking history, age or obesity, rather than some purported environmental or workplace hazard.

G.      NIOSH reported a mean decline in $FEV_1$ (forced expiratory volume in one second) and FVC (forced vital capacity) values for non-smokers versus ever-smokers in the employee population. However, they improperly failed to consider and explain the lack of statistical significance in longitudinal changes in lung function over time in these workers versus a control population, especially when the data is considered in light of age, race, weight changes and gender differences in the employee group.

H.      As another example of NIOSH's flawed methodology, the reference population NIOSH used for its scientific analysis and conclusions was not sufficiently

comparable to Sensient's employee population. NIOSH failed to use a more scientifically accurate and rigorous available control group.

47.     Despite being utterly irrelevant to an HHE Report as authorized by NIOSH regulations, in the preliminary pages of the Report, the HHE authors referenced Sensient's previous exercise of its constitutional right to access the courts and petition the courts for redress against government conduct. Even without regard to the faulty science employed by NIOSH, the Report's conclusions and recommendations do not support its language and tone, which are generally hostile to and critical of Sensient.

48.     On August 26, 2011, at a NIOSH public meeting, defendant Kreiss made public comments about the prevalence of abnormal restrictive spirometry in Sensient's employees, which, in light of the serious flaws in NIOSH's science and methodology, were misleading.

*The Iinitial Defective Search Warrant and the Amended Search Warrant.*

49.     With no advance notice to Sensient, on Monday, September 12, 2011, IOSHA officials arrived at the Indianapolis facility very early in the morning and demanded entry pursuant to a state search warrant obtained *ex parte* on September 9, 2011, a Friday afternoon. In executing the warrant, IOSHA officials represented to Sensient employees that their intrusion into Sensient's facility was a continuation of the 2008 NIOSH inspection.

50.     The warrant had been obtained by the Indiana Commissioner of Labor. By going to the state court judge, NIOSH and IOSHA, acting in concert, deliberately circumvented the federal judge's May 2009 decision, which provided that Sensient could return to federal court ("this Court") if NIOSH wanted to conduct a second inspection with a warrant. See paragraph 37, *supra.* The undated application for the state warrant cited 610 IAC § 9-2-5 as authority. The materials submitted in support of the state warrant alleged that IOSHA had received a referral

from federal officials and misleadingly claimed that IOSHA and NIOSH officials had "met with resistance" during a 2008 inspection of Sensient. Moreover, despite the faulty and unreliable science employed by NIOSH, an affidavit from defendant Reason falsely asserted that "Documentation and information from NIOSH revealed that employees have experienced adverse respiratory conditions due to exposure to food flavoring chemicals."

51.     On September 14, 2011, Sensient again exercised its First Amendment right to petition the courts for redress of its grievances. Sensient moved to quash the warrant in the issuing Indiana state court on multiple grounds, including the fact that the warrant lacked particularity and was not supported by probable cause. During a hearing on that motion and in response to Sensient's objection that the language of the warrant allowed for an unlimited "wall to wall" inspection of the Sensient facility, IOSHA counsel claimed that she had not "intended" the warrant to be so general.

52.     The state court judge quashed the original search warrant. However, the judge permitted IOSHA to propose a narrower amended warrant. The second warrant, captioned "Amended Search Warrant" and issued on September 15, 2011, limited the scope of the IOSHA search as follows:

> ... [T]his warrant shall be limited in scope to those documents, records, and areas associated with the use of flavoring substances listed as high priority in Appendix D of the National enforcement [sic] Program[2] . . . .

53.     The warrant purported to authorize IOSHA's compliance safety and health officers to enter Sensient's premises "during regular working hours and at any other reasonable times" to inspect and investigate "in a reasonable manner and to a reasonable extent." The warrant authorized IOSHA compliance officers to do such inspection of the workplace for conditions, materials and other devices "bearing on whether the employer is furnishing to its

---

[2] This reference should have been to the National *Emphasis* Program.

16

employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to the employees . . ." This authority was provided in the warrant despite the fact that Sensient's facility had never received an IOSHA citation and despite the fact that NIOSH's inspection that resulted in the July 2011 HHE Report did not identify any health hazards.

54.     Critically, the Amended Search Warrant contained no temporal limitations, either as to when its execution was required to begin, or as to an "expiration" or completion date, or time by which IOSHA was required to conclude its activities. The warrant likewise contained no requirements as to inventory or return processes. Thus, the warrant was entirely open-ended and allowed IOSHA inspectors to continue executing indefinitely.

*Execution of the Amended Search Warrant.*

55.     Beginning September 15, 2011, and continuing through at least October 14, 2011, the date on which Sensient was first successful in convincing the issuing judge to stay execution of the Amended Search Warrant, IOSHA relied on the purported authority of the amended warrant to make repeated and numerous separate entries into and searches of Sensient's facility in violation of Sensient's Fourth Amendment rights.

56.     In addition to the unreasonable, open-ended nature of the warrant, the conduct of IOSHA officials under and outside the scope of the warrant was constitutionally unreasonable in a variety of respects, including, but not limited to, those described below.

A.     On the first day of IOSHA's execution of the warrant, defendant Reason told Sensient officials that IOSHA's actions were a "continuation" of the prior NIOSH inspection, thereby confirming the fact that IOSHA was mis-using its enforcement power and the power of the search warrant to further the agenda of individuals employed by

NIOSH.  Other Sensient officials also heard Reason say that he was there at NIOSH's referral.

B.     As another example, on September 15, 2011, IOSHA's compliance officers had informed Sensient that they would not be on site that day.  Despite that affirmative representation, the compliance officers arrived at Sensient around noon, and conducted an opening conference and walkthrough, took photographs, and served Sensient with Document Requests.

C.     Throughout the at least nine separate days of subsequent entries and searches of Sensient's property, IOSHA never performed air sample testing for any of the "high priority" substances authorized under the amended search warrant.

D.     Defendants also made false and misleading statements to Sensient which prevented Sensient from meaningfully participating in the inspection process.  For example, on September 28, 2011, Defendants affirmatively represented to Sensient that IOSHA would provide Sensient with at least one day and perhaps two days advance notice of its intent to conduct testing.  Sensient had asked IOSHA for this accommodation so that Sensient could have consultants present alongside IOSHA inspectors to take parallel measurements and samples pursuant to normal inspection protocol.  Sensient requested the advance notice because it was paying its consultants $1,500 per day to be on-site when IOSHA showed up to do air sampling. Despite IOSHA's affirmative representation that they would provide Sensient with at least one day notice, IOSHA appeared unannounced at 7:00 a.m. on October 6, 2011, to conduct testing and did in fact conduct testing on that date, making it impossible, for almost two hours, for Sensient's consultants to take parallel measurements and samples.  As total

dust testing is not categorized as "high priority" in Appendix D, the total dust testing conducted by IOSHA on that day was not authorized by the amended warrant.

E.       At various times during the repeated entries and execution of the warrant, IOSHA officials ignored Sensient's safety and health precautions and refused to conform their inspection procedures to the reasonable requirements of Sensient's business. As an example, on October 4, 2011, defendants Reason and Jaques came to the facility and stated that they needed to be in the plant that day. When asked by Sensient management about their intentions, Reason refused to explain why he needed to travel through areas of the plant that had already been searched under the warrant. When asked if he would be taking readings or measurements (again, so that Sensient could as is standard practice conduct its own side-by-side measurements as previously agreed), Reason responded that if Sensient delayed him, he would call the police and have them found in contempt.

F.       On the same day, October 4, 2011, Reason and Jaques went to a flammable liquids storage area. They brought with them a velometer, a calculator, a cellular telephone, and a Canon A470 flash camera. None of these devices were intrinsically safe for use in a flammable storage area. Sensient officials warned Reason and Jaques that such devices could not be used safely in the area's atmosphere because any of them could serve as an ignition source. Jaques ignored the warnings and continued to take flash photographs and other readings, including near a caged area immediately adjacent to stacks of barrels of flammable material. Because the Sensient employee present with them no longer felt safe, he instructed Reason and Jaques to stop what they were doing. Reason became agitated, but told Jaques to stop taking the photographs. However, the two continued to use the unsafe velometer and kept their

19

other potential ignition sources in the area.  They also refused to share with Sensient their velometer readings regarding the velocity of the air flow from the ventilation in that room.

G.     At various times during the repeated entries and execution of the warrant, Defendant Reason threatened Sensient officials, including threats to call the police or to issue citations, in the face of Sensient's reasonable attempts to obtain information, to participate in the inspection and to take its own measurements and samples, alongside the IOSHA compliance officers.  In one rather remarkable incident, Reason demanded that a Sensient employee no longer be allowed to participate in the inspection process because he was a corporate officer from Sensient's St. Louis business unit.

H.     As a part of their unreasonable and repeated execution of the Amended Search Warrant, Defendants Reason and Jaques served four document requests on Sensient and set unreasonable and arbitrary production deadlines for the production of voluminous amounts of material, making compliance extremely burdensome and unreasonable  By way of example, on September 29, 2011, IOSHA served a document request on Sensient in the late afternoon, and unreasonably demanded partial compliance by 5:00 p.m. that same day (a Thursday), and the remainder, which encompassed 6,361 pages, by noon the following Monday.  As another example, on October 6, 2011, defendant Reason served a document request on Sensient at 3:30 p.m.  Part of the request had a 6:00 p.m. deadline that same day, and the remainder had a deadline of noon the following day.  Defendant Reason followed the document request with a 7:21 p.m. email demanding immediate compliance.

I.      At various times during the execution of the warrant, defendants Reason and Jaques unreasonably refused to inform Sensient officials of the nature of the inspection or the particular testing or interviews or other searching they intended to conduct, despite their prior agreement to the contrary.  Indeed, the Sensient facility has a health and safety policy that requires that all visitors to its facility be guided and accompanied by Sensient personnel.  Reason and Jaques attempted to circumvent this policy and at times actively misled testing consultants about how or where they were conducting their tests.  By way of example, on October 6, 2011, IOSHA conducted a surprise visit contrary to their above-referenced commitment to provide advanced notice, and their statement the day before that they would not be at the facility the following day.  When they arrived, they did not test for any of the high priority substances, but instead tested for respirable dust, a substance not within scope of the amended search warrant.  They then actively misled Sensient's consultant regarding the status of pumps and filter media, thus making it impossible for Sensient's consultants to do legitimate side-by-side testing.

J.      At various times during the repeated entries and execution of the warrant, IOSHA officials have refused to comply with safety policies at Sensient's facility, including traveling in the plant, labs and offices without an escort and in violation of plant safety policies, and refused to identify themselves and sign in and out of the facility, all in direct violation of 29 C.F.R. § 1903.7 and 610 IAC § 9-2-8.

K.      At various times during the repeated entries and execution of the warrant, IOSHA's compliance officers have unreasonably demanded entry into areas and to search for items well outside the scope of the warrant.

L.     At various times during the repeated entries and execution of the warrant, IOSHA compliance officers have made false and fabricated accusations against Sensient officials; in particular, that Sensient officials had harassed employees who were interviewed by the compliance officers and that union representatives had informed IOSHA of the same.

M.     By the use of threats, IOSHA attempted to intimidate Sensient from exercising its right to talk to its own employees after they had been interviewed by IOSHA.  In a similar maneuver, IOSHA interfered with Sensient's right to offer legal representation to its employees. In this context, IOSHA communicated with, and upon information and belief, improperly took instruction from and acted in concert with Washington-based officials of the International Brotherhood of Teamsters.

*Sensient Again Exercises Its First Amendment Right to Petition the Court For Redress –*
*IOSHA Responds by Again Retaliating against Sensient.*

57.     On October 6, 2011, Sensient filed an emergency motion to quash the Amended Search Warrant, informing the issuing judge of its position that IOSHA was systematically ignoring the scope of the court's amended warrant.

58.     On information and belief, IOSHA retaliated against Sensient for its exercise of its First Amendment rights.  Specifically, on October 7, 2011, in direct response to Sensient's exercise of its constitutional rights, IOSHA filed a groundless motion asking the state court judge to issue a rule to show cause why Sensient should not be held in contempt.

59.     As of the date of filing of this complaint, Sensient's emergency motion to quash the amended search warrant and IOSHA's motion for a rule to show cause are pending, and the state court has stayed execution of the warrant through December 16, 2011.

## FIRST CAUSE OF ACTION – AS-APPLIED CHALLENGE

## TO REGULATIONS AUTHORIZING COMPULSORY PROCESS

60.     The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated by reference into this Cause of Action.

61.     The Fourth Amendment's warrant and reasonableness requirements extend to administrative inspections and searches.

62.     The Amended Search Warrant for Sensient was issued pursuant to 610 IAC § 9-2-5. Those regulations provide for issuance of "compulsory process," defined as an ex parte inspection warrant, in instances where an employer has refused to permit IOSHA compliance officers to enter, or, in advance of an attempted inspection if it is believed that the employer will refuse entry.

63.     The Indiana statute and regulations authorizing this compulsory process do not delineate any specific requirements for such warrants as to time, scope or manner of execution.

64.     As applied, these regulations violate Sensient's Fourth Amendment rights against unreasonable searches and seizures.  The regulations authorized and resulted in the issuance of the amended search warrant which contained no temporal limitation or expiration, and unreasonably and unlawfully delegated to IOSHA executing officials the authority to decide how long the amended warrant would remain valid.

65.     610 IAC § 9-2-5 violated the Fourth Amendment because, as applied to Sensient, the regulations resulted in repeated and blatantly unreasonable searches of Sensient's property.

66.     WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment that as applied, 610 IAC § 9-2-5 is unconstitutional in violation of the Fourth Amendment.

**SECOND CAUSE OF ACTION -- APA CHALLENGE TO NIOSH'S ISSUANCE,**

**PUBLICATION AND REQUIREMENT FOR POSTING HHE REPORT**

67.    The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated by reference into this Cause of Action.

68.    The Administrative Procedures Act, 5 U.S.C. § 101 et seq., authorizes judicial review of agency action when no other adequate remedy exists.  5 U.S.C. §§ 701-706.  Here no other adequate remedy exists.

69.    NIOSH issued an HHE Report, required Sensient to post the HHE Report within the Sensient facility, forwarded the HHE Report to other parties, publicly distributed the HHE Report via its website, and publicly commented on the HHE Report findings.

70.    NIOSH's issuance of the HHE Report and its requirement that Sensient post the report constitute final agency action.  The HHE Report concluded and formalized NIOSH's decision-making and analysis and NIOSH's action directly determined Sensient's rights and obligations relative to matters set forth in the HHE Report.

71.    NIOSH's actions adversely affected Sensient and caused injury in fact to Sensient.  The HHE Report is an abuse of discretion by NIOSH and the NIOSH defendants in employing faulty and inaccurate scientific methodologies, misconstruing and misclassifying the data on which they relied, and as a result contains inaccurate findings which cause harm to Sensient, including harm to its competitive position in the market, its good will and reputation with its employees and the public at large, and substantial costs in attempting to defend itself.

72.    Sensient asks that this Court enter a judgment declaring NIOSH's public issuance of the HHE Report and its requirement that Sensient post that report to be unlawful under the Administrative Procedures Act, 5 U.S.C. § 706, and ordering that NIOSH's actions, findings and

24

conclusions in the HHE Report be set aside as arbitrary, capricious, an abuse of discretion, not in accordance with law, unsupported by substantial evidence, and unwarranted by the facts.

## THIRD CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983

### FOURTH AMENDMENT VIOLATIONS

73.     The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated by reference into this Cause of Action.

74.     The Fourth Amendment gives Sensient the right to be free from unreasonable searches and seizures, protects against searches conducted in an unreasonable manner, and requires that any search conducted pursuant to a warrant be limited in time, scope and manner.

75.     IOSHA compliance officers Reason and Jaques were acting under color of state law and in their individual and official capacities when they executed the Amended Search Warrant and conducted the inspection of the Sensient facility in September and October 2011.

76.     In conceiving, directing and  conducting the inspection and under color of state law, defendants intentionally and wrongfully deprived Sensient of its rights secured by the Fourth Amendment of the U.S. Constitution and laws of the United States.  In particular, in intentional and complete and wanton disregard of Sensient's Fourth Amendment rights, defendants Reason and Jaques unreasonably far exceeded the scope of legal authority of NIOSH or IOSHA or of the Amended Search Warrant in the items searched for and the places searched. And in further intentional and complete and wanton disregard for Sensient's Fourth Amendment rights Reason and Jaques continued to search well after the expiration of any reasonable time limits for this warrant.

77.     In intentional and complete and wanton disregard of Sensient's Fourth Amendment rights, Reason and Jaques abused the process afforded to them through the

25

Amended Search Warrant by unreasonably and intentionally using the warrant and its execution as a tool and device to harass and retaliate against Sensient for its exercise of constitutional rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution. Such official government conduct is patently unreasonable and violated Sensient's Fourth Amendment rights to be free of unreasonable searches and seizures.

78.     As a direct result of said defendants' wrongful and unlawful conduct, Sensient has suffered damages in the form of economic loss and a deprivation of its civil and constitutional rights. Plaintiffs seek all compensatory and punitive damages and costs against Reason and Jaques, and for a permanent injunction preventing each and all defendants from continuing these unconstitutional practices.

## FOURTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983

### FIRST AMENDMENT VIOLATIONS

79.     The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated by reference into this Cause of Action.

80.     The First Amendment to the United States Constitution affords to and protects Sensient's right to petition the government, including the courts, for redress of grievances.

81.     IOSHA compliance officers Reason and Jaques, in their individual and official capacities and acting under color of state law, and NIOSH officials Kreiss, Cox-Gauser and Piacitelli, in their individual and official capacities and acting under color of federal law, wrongfully attempted to punish and retaliate against Sensient for its exercise of its above-described rights secured by the First Amendment.

82.     Sensient engaged in activity protected by the First Amendment, including its 2008 challenge to NIOSH's request for a second visit to the facility; its September 2011 motion to

26

quash the original search warrant; and its October 2011 challenge to the continued execution of the amended search warrant.

83.    Defendants Reason, Jaques, Kreiss, Cox-Ganser, and Piacitelli, in intentional and complete and wanton disregard of Sensient's First Amendment rights, used IOSHA warrant procedures, the Amended Search Warrant, and the motion for contempt as tools and devices to retaliate against Sensient for its exercise of its First Amendment rights, and in retaliation for Sensient's attempts to voice its objections to the HHE Report.

84.    Defendants' conduct was intended to deter Sensient from future First Amendment activity, particularly to deter Sensient from petitioning the government for redress and the courts to protect its constitutional and legal rights.

85.    Sensient's First Amendment activity caused Defendants to take this retaliatory action.

86.    As a direct result of said Defendants' wrongful and unlawful conduct, Sensient has suffered damages in the form of economic loss, and a deprivation of its civil and constitutional rights. Plaintiff seeks all compensatory and punitive damages and costs against Reason, Jaques, Kreiss, Cox-Ganser, and Piacitelli, and for a permanent injunction preventing each and all defendants from continuing these unconstitutional practices.

## FIFTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1983

### FOURTEENTH AMENDMENT VIOLATIONS

87.     The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated by reference into this Cause of Action.

88.     Under the Fourteenth Amendment of the U.S. Constitution and the Equal Privileges and Immunities Clause of the Indiana Constitution, Article I, Section 23, all persons similarly situated must be treated alike.

89.     IOSHA, and Reason and Jaques, all purporting to act in their individual and official capacities, NIOSH, and Kreiss, Cox-Gauser and Piacitelli, all purporting to act in their individual and official capacities, wrongfully deprived Sensient of its rights secured by the Fourteenth Amendment and the Indiana State Constitution, to equal protection and due process of law.

90.     Said defendants, in intentional and complete and wanton disregard for Sensient's Fourteenth Amendment rights, subjected Sensient to unreasonable and predatory enforcement of certain NIOSH and IOSHA laws and regulations, but did not subject other similar companies to the similar actions. There is no rational basis for this distinction.

91.     As a direct result of said defendants' wrongful and unlawful conduct, Sensient has suffered damages in the form of economic loss, and a deprivation of its civil and constitutional rights. Plaintiff seeks all compensatory and punitive damages and costs against Reason, Jaques, Kreiss, Cox-Ganser, and Piacitelli, and for a permanent injunction preventing each and all defendants from continuing these unconstitutional practices.

## SIXTH CAUSE OF ACTION

## STATE OF INDIANA ABUSE OF PROCESS

92.     The allegations in all other paragraphs and sections of this complaint are hereby specifically incorporated be reference into this Cause of Action.

93.     On information and belief, beginning at least by September 12, 2011, and continuing to December 5, 2011, IOSHAcompliance officers Reason and Jaques, acting in their individual and official capacities as representatives of IOSHA, NIOSH officials Kreiss, Cox-Ganser and Piacitelli, purporting to act in their individual and official capacities as representatives of NIOSH, and Azita Mashayekhi, as an employee of the International Brotherhood of Teamsters willfully acted with an ulterior and improper motive or purpose, and used the legal process in a manner and for goals not proper in the regular conduct of the legal proceeding.

94.     In particular, the individual defendants, and each and all of them, misused the legal process by acting in concert to apply for, obtain and execute an IOSHA search warrant and threatened other legal action against Sensient for ends distinct from the purpose that a legitimate warrant is intended to provide.

95.     On information and belief, the genesis of the Health Hazard Evaluation, and ultimately this abuse of process, was Mashayekhi, who convinced the local union to make the HHE request.  Thereafter, the use of the enforcement warrant was created and conceived of by NIOSH officials, and was obtained and executed by IOSHA and its representatives, as a pretext for the furtherance of unauthorized NIOSH research and to punish, harass, and retaliate against Sensient for its exercise of its constitutional rights under the First and Fourth, and Fourteenth Amendments to the United States Constitution, including its rights to petition and seek redress in

29

the courts, its right to voice objection to NIOSH and seek redress therefrom, and its rights under the Fourth Amendment against unreasonable searches and seizures.  Likewise, IOSHA officials filed the October 7, 2011, motion for contempt against Sensient to punish, harass, and retaliate against Sensient for its exercise of constitutional rights under the First, Fourth and Fourteen Amendments to the United States Constitution.

96.     As a direct result of said defendants' wrongful and unlawful conduct, Sensient has suffered damages in the form of unreasonable intrusion and invasion of its private property, economic loss and a deprivation of its civil and constitutional rights.  Sensient seeks all compensatory and punitive damages against Reason, Jaques, Kreiss, Cox-Ganser, Piacitelli, and Mashayekhi, in their official and individual capacities.

## SEVENTH CAUSE OF ACTION

## STATE OF INDIANA CONSPIRACY TO INJURE TRADE OR BUSINESS

97.     The allegations in all other paragraphs and sections of this Complaint are hereby specifically incorporated by reference into this Cause of Action.

98.     In the foregoing conduct the individual defendants, Reason, Jaques, Kreiss, Cox-Ganser, and Piacitelli, each and all of them, conspired together and with others unknown, and acted in concert to injure Sensient's trade and business.

99.     In so doing, the individual defendants caused Sensient to suffer damage in an amount to be determined at trial.

WHEREFORE, Plaintiff asks this Court to enter judgment in its favor and against each of the defendants for their wrongful actions, and inactions, for damages against the individual defendants in their individual capacities in an amount that will fully compensate the plaintiff for

violation of its civil rights, for punitive damages against the individual defendants in their

individual capacities, for costs and attorney's fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988,

for prejudgment interest, for a declaration under 28 U.S.C. § 2201 and Ind. Code. § 34-14-1-1

that the defendants' conduct violated plaintiff's federal constitutional rights, for a permanent

injunction preventing each and all defendants from continuing these unconstitutional practices,

and for all other just and proper relief.


Dated this 8th day of December, 2011.

                    MICHAEL BEST & FRIEDRICH, LLP

                    Paul F. Linn
                    100 E. Wisconsin Ave., Ste. 3300
                    Milwaukee, Wisconsin 53202
                    Telephone: (414) 271-6560
                    Facsimile: (414) 277-0656
                    E-mail: pflinn@michaelbest.com
                    Counsel for Plaintiff Sensient Flavors


                    BARNES & THORNBURG LLP

                    Mark D. Stuaan
                    Barnes & Thornburg LLP
                    11 S. Meridian Street
                    Indianapolis, Indiana 46204
                    Tel: 317-231-7720
                    Fax: 317-231-7433
                    E-mail: mark.stuaan@btlaw.com
                    Counsel for Plaintiff Sensient Flavors